IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 27, 2015


**TAVARIA L. MERRITT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Wilson County**
**No. 10CR18     Brody N. Kane, Judge**

_____

**No. M2014-02532-CCA-R3-PC – Filed December 10, 2015**

_____

The petitioner, Tavaria L. Merritt, appeals the denial of his petition for post-conviction relief. He argues that trial counsel was ineffective for failing to investigate his mental capacity and for failing to meet with him a sufficient number of times. He also argues that his guilty pleas were not knowing and voluntary. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

E. Marie Farley, Lebanon, Tennessee, for the appellant, Tavaria L. Merritt.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Tom P. Thompson, District Attorney General; and Thomas Swink, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

# FACTS AND PROCEDURAL HISTORY

This case arose after several concerned parents of children who attended the church where the petitioner worked contacted authorities and accused the petitioner of sexually assaulting their children. *State v. Tavaria Merritt*, No. M2012-00829-CCA-R3-CD, 2013 WL 6505145, at *1 (Tenn. Crim. App. Dec. 10, 2013), *no perm. app. filed*. Three of the victims were interviewed at the Child Advocacy Center, and they disclosed that the petitioner penetrated them anally and orally on separate occasions. *Id.* One of the victims was ten years old at the time, and the other two victims were eleven years old. *Id.* Shortly after the victims made their disclosures, Detective Brian Harbaugh contacted the petitioner and his mother and made efforts to speak with the petitioner about the allegations. *Id.*

On August 20, 2009, the petitioner appeared unannounced at the Wilson County Sheriff's Department and said that he wanted to speak to Detective Harbaugh about the allegations that the victims had made. *Id.* In an interview, which was recorded and ruled admissible at trial, the petitioner confessed to penetrating the three victims who had disclosed the abuse. *Id.* His confession generally matched the disclosures of the three victims. *Id.* at *2. The petitioner was seventeen years old at the time of the offenses and was eighteen years old when he was interviewed by Detective Harbaugh. *Id.*

The petitioner entered an open guilty plea to nine counts of rape of a child, and the trial court imposed an effective sentence of 225 years. *Id.* On direct appeal, this court reduced the sentence to an effective term of fifty years in prison. *Id.* at *6-9.

The petitioner subsequently filed a petition for post-conviction relief. At the post-conviction hearing, Jerry Morton testified that he first met the petitioner when the petitioner was thirteen years old and that he acted as a mentor for the petitioner. Mr. Morton was a pastor of a local church, and the petitioner worked as a youth director, where he was responsible for organizing and directing services for the youth of the church. Mr. Morton was the petitioner's "spiritual advisor" and "godfather," and he accompanied the petitioner to meet with trial counsel "six or seven times." He stated that trial counsel asked questions to learn if the petitioner understood the nature of the criminal proceedings against him and said that trial counsel explained the severity of the case. Mr. Morton also heard trial counsel inform the petitioner of the length of the potential sentence that he was facing.

Mr. Morton explained that the petitioner's IQ was lower than normal and that he had difficulty comprehending information and verbalizing his thoughts, often needing to write down information to understand it. Mr. Morton did not recall the petitioner taking any written notes during his meetings with trial counsel. Mr. Morton stated that the

2

petitioner told him that he did not understand everything that he was told by trial counsel, and Mr. Morton believed that the petitioner's right to a trial was not fully explained to the petitioner's understanding. Mr. Morton recalled twice asking for the petitioner to receive a competency evaluation, and he could not recall an evaluation ever being performed or any actions that trial counsel took to address concerns with the petitioner's mental capacity.

Mr. Morton was present when trial counsel explained the State's offer of a plea agreement to the petitioner. Mr. Morton stated that trial counsel told the petitioner that he would likely receive the maximum sentence if he went to trial and that a guilty plea might result in leniency for the petitioner. Mr. Morton believed that this advice led the petitioner to plead guilty. Mr. Morton stated that he himself clearly and easily understood the plea agreement after hearing trial counsel explain the agreement.

The petitioner testified that he met with trial counsel "more than five times but less than ten." He wanted to bring his mother and Mr. Morton to these meetings so that they could help explain to him anything that he did not understand. He stated that trial counsel never informed him of his possible sentence exposure or discussed the strengths and weaknesses of his case. The petitioner testified that he never discussed the option of a trial with trial counsel, although he said that he informed trial counsel several times that he wanted to go to trial. The petitioner explained that they primarily discussed the State's plea agreement, which was an offer for a thirty-five year sentence. He testified that trial counsel told him to reject that offer and that it would be best to avoid a trial and to allow the trial judge to sentence him. The petitioner testified that he felt as though his only option was to plead guilty and to allow the judge to sentence him. He stated that trial counsel did not inform him of the potential sentence he could receive if he were convicted at trial.

The petitioner asserted that he, his mother, and Mr. Morton repeatedly advised trial counsel that the petitioner did not understand the substance of his conversations with trial counsel. The petitioner testified that he did not understand that he had a constitutional right to plead not guilty and to proceed to trial. The petitioner did not believe that trial counsel was prepared for a trial on the day that the petitioner pled guilty. The petitioner stated that trial counsel never advised him of the rights that he would be waiving by pleading guilty. The petitioner said that he was not aware of the potential sentence that he faced or what the sentence was for one conviction of rape of a child.

The petitioner testified that he did not understand what he was doing at the time that he pled guilty. He stated that trial counsel told him that the trial court would ask him questions when he pled guilty and that he should answer them affirmatively. He contended that he repeatedly told trial counsel that he did not understand what he was

doing, including on the day that he pled guilty. He stated he pled guilty based solely on the advice of trial counsel. The petitioner did not believe that trial counsel devoted enough time to his case, and he testified that he asked trial counsel to spend more time with him.

On cross-examination, the petitioner testified that Mr. Morton was not telling the truth when he said that trial counsel explained the severity of the case to the petitioner. He also testified that trial counsel did not explain the length of his potential sentence. The petitioner did not recall being present in the courtroom during a hearing on his motion to suppress his statement to law enforcement officers. He remembered being in the courtroom when he entered his guilty plea, but he stated that he did not remember being informed by trial counsel and the trial court that he had a right to plead not guilty.

In an effort to have the petitioner acknowledge that trial counsel had discussed his rights and potential sentence with him, the prosecutor asked the petitioner to read aloud from the transcript of his guilty plea, in which the petitioner stated that he had reviewed the evidence and his potential sentence with his attorney and acknowledged all of his available rights and the rights that he was waiving by pleading guilty. At the plea hearing, he also agreed that trial counsel had discussed the case with him and had provided him with effective representation. The transcript included a colloquy between the petitioner and trial counsel where the petitioner acknowledged that he had initially planned to accept the State's offer of a thirty-five year sentence if his motion to suppress was denied. He agreed that at the conclusion of the motion, he made the decision not to accept the offer and to enter an open plea of guilty.

After reading the transcript, the petitioner testified that he did not understand any of the words that he had just read and that he did not remember the words from when he entered his guilty plea. He testified that he did not answer "Yes sir" to the questions because he understood the judge but because he had been told to do so by trial counsel. He stated that he did not understand the questions that the trial court was asking him.

On re-cross examination, the petitioner admitted that he had preached in front of a congregation before. He stated that preaching consisted of speaking in front of a group of people.

Trial counsel testified that he had handled approximately forty jury trials in his career. Trial counsel testified that his calendar indicated "approximately ten appointments" with either the petitioner or members of his family, and he stated that there were additional weekend meetings that were impromptu and undocumented. He recalled "at least five or six meetings" where Mr. Morton was present. Through meetings with the petitioner's family, trial counsel learned that the petitioner may have had

academic difficulties in school and may not have been processing information at a level appropriate for his grade level. Trial counsel requested the petitioner's scholastic and mental health records, and the petitioner's family provided him with a large "stack of records." Trial counsel reviewed the records and stated that while there was evidence that the petitioner struggled in school, "there was no indication of any lack of competency, particularly in . . . the context of a trial matter." Trial counsel received no indication from his interactions with the petitioner that the petitioner was incompetent, and he described the petitioner as a "very articulate, very bright young man." The petitioner wrote trial counsel numerous letters, which were "very formal" and "very well-written." Trial counsel recalled that the juvenile court "made a specific finding of fact that there were no issues of mental health or no other reasons why [the petitioner] should not be transferred and tried as an adult." Trial counsel stated that he never had any reason to believe that the petitioner did not understand the substance of their conversations and that the petitioner never told him that he did not understand.

Trial counsel testified that he attempted to answer all of the petitioner's questions. He provided the petitioner and his family with discovery to review, which included the petitioner's interview with law enforcement officers, and the petitioner returned to a later meeting with questions about the discovery. After this meeting, trial counsel began to develop trial strategies. He discussed with the petitioner the fact that he had confessed to the crimes in a recorded interview with police. Trial counsel agreed that he advised the petitioner not to plead guilty unless his statement was admitted because the case hinged on witness credibility at that point. Trial counsel believed that a successful outcome at trial was likely only if the petitioner's statement was suppressed because the petitioner confessed to crimes against all three victims in the statement.

Trial counsel testified that the petitioner "clearly wasn't happy about taking a plea, but there was no coercion" on the part of trial counsel. Trial counsel showed the petitioner the original plea offer, which included the minimum and maximum sentence for each count, along with the State's proposed offer of a thirty-five year sentence. Trial counsel testified that he told the petitioner that he was facing a potential sentence of 225 years, and he informed the petitioner that there was a substantial likelihood that he would be convicted if his statement was admitted. He told the petitioner that if the motion to suppress was successful, they would proceed to trial. Trial counsel explained that if the motion to suppress was denied, his goal was to reduce the amount of time that the petitioner would have to spend in prison because he was facing such an extensive sentence. Trial counsel advised the petitioner that if the trial court denied his motion to suppress, he should accept the State's offer and plead guilty to one count because the evidence of his guilt would be substantial.

5

Initially, the petitioner agreed that if the motion to suppress was denied, he would accept the State's offer and enter a plea of guilty on that date. After the motion was denied, the petitioner changed his mind and informed trial counsel that he did not want to plead guilty that day. Trial counsel told the petitioner that the State would revoke the offer if the petitioner did not accept the plea that day. Trial counsel testified that the petitioner said that he "wanted an additional forty-eight hours for whatever reason." The petitioner apprised trial counsel that "he wanted to go preach that weekend and he wanted a weekend to come back." Trial counsel informed the petitioner that if he rejected the agreement, his options would be either to go to trial or to enter an open plea and allow the judge to determine the sentence. Trial counsel warned the petitioner that he likely would receive a longer sentence than thirty-five years if he declined the plea offer and told him repeatedly that he was "trading forty[-]eight hours for easily forty[-]five years."

The petitioner declined the plea offer, and he spoke with trial counsel on the morning that the trial was scheduled. Trial counsel informed him that his only options were to go to trial or to enter an open guilty plea. Trial counsel testified that he discussed the ramifications of an open guilty plea and the petitioner's possible sentence if found guilty at trial, advising the petitioner that an open guilty plea could result in a more lenient sentence than the petitioner would receive after a jury trial. Trial counsel testified that he had no reason to believe that the petitioner did not understand these discussions.

The post-conviction court issued a written order denying the petition. The court found that the petitioner had not demonstrated that counsel performed deficiently or that but for any deficiency the petitioner would have proceeded to trial instead of pleading guilty. The court found that the petitioner did not exhibit any signs of diminished mental ability. The court credited the testimony of trial counsel that the petitioner's records did not indicate that the petitioner was incompetent. The court also found that the petitioner was a well-spoken individual who was able to read a lengthy portion of the guilty plea transcript easily. The court noted that the petitioner's preaching background necessarily required verbal skills and reading comprehension skills.

The court credited the testimony of trial counsel over that of the petitioner in regards to the claims that trial counsel failed to adequately meet with the petitioner. The court stated that the petitioner's credibility was questioned because he alleged in his petition that he only met with trial counsel once but testified at the hearing that he met with trial counsel more than five times but less than ten times. The court found that this testimony was also corroborated by the testimony of Mr. Morton and trial counsel.

The court found that the petitioner's decision to plead guilty "was his and his alone" and was not the result of coercion by trial counsel. The court observed that the petitioner requested and received an extension to enter his plea until the day of trial, and

6

the court found that this "extension was not without a significant price." The court credited the testimony of trial counsel that he advised the petitioner that he was exchanging forty-eight hours of freedom for forty-five years in prison. The court found that the petitioner suffered "remorse and regret for his decision to refuse the State's offer" but that the guilty plea transcript reflected that the decision to plead guilty was made solely by the petitioner.

The petitioner filed a timely notice of appeal, and we proceed to consider his claims.

## ANALYSIS

On appeal, the petitioner argues that he received the ineffective assistance of counsel and that his guilty plea was not knowing and voluntary. He contends that trial counsel failed to investigate his mental capacity and failed to meet with him in a meaningful manner. He also contends that his guilty plea was involuntary because it was coerced and was not made with an understanding of the nature and consequences of the plea.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2010). The petitioner bears the burden of proving the allegations of fact giving rise to the claim by clear and convincing evidence. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). This court generally defers "to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013). Claims for post-conviction relief premised on ineffective assistance of counsel present mixed questions of law and fact, which this court reviews de novo with no presumption of correctness. *Id.*

### I. Ineffective Assistance of Counsel

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. A petitioner satisfies the deficiency prong of the test by showing that counsel's representation fell below an objective standard of reasonableness; that is, "the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter*, 523 S.W.2d at 936); *see Strickland*, 466 U.S. at 687. The petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). In order to fairly assess counsel's conduct, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In order to satisfy the prejudice prong in the context of a guilty plea, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If the petitioner fails to establish either deficiency or prejudice, post-conviction relief is not appropriate, and this court need not address both components if the petitioner makes an insufficient showing as to one component. *Grindstaff*, 297 S.W.3d at 216 (citing *Goad*, 938 S.W.2d at 370).

The petitioner contends that trial counsel should have had the petitioner's mental capacity evaluated by a mental health professional. He contends that he was unable to understand what he was doing when he pled guilty and that his plea was not knowing and voluntary. Trial counsel testified that the petitioner and his family made trial counsel aware that the petitioner may suffer from a diminished intellectual capacity. Trial counsel testified that, in response, he examined these records and found that there was no

8

evidence that the petitioner suffered from a diminished mental capacity. The post-conviction court credited the testimony of trial counsel. The court found that the petitioner was very well-spoken and read extensively from his guilty plea transcript without difficulty. Additionally, the court noted that the petitioner's background in preaching necessarily required verbal skills and reading comprehension abilities. We conclude that the record does not preponderate against the findings of the trial court and that the petitioner is not entitled to relief.

The petitioner next argues that trial counsel failed to meet with him in a meaningful manner. The post-conviction court found that trial counsel's testimony was more credible on the subject than that of the petitioner, as inconsistencies between the assertions in the petitioner's petition and his testimony at the post-conviction hearing cast doubt on his credibility. The court also found that the testimony of Mr. Morton and trial counsel corroborated the petitioner's testimony that more than one meeting occurred. Mr. Morton recalled meeting with trial counsel five or six times, and trial counsel testified that he had ten appointments documented with the petitioner or members of his family. Trial counsel also testified that he had many more weekend meetings with the petitioner and his family, in addition to the meetings that were documented in his schedule. The petitioner has not shown that trial counsel performed deficiently or that the petitioner suffered prejudice, and he is not entitled to any relief.

## II. Guilty Plea

The petitioner claims that his guilty plea was not knowing and voluntary. He argues that the plea was coerced by trial counsel and that trial counsel did not explain the nature and consequences of the plea.

A guilty plea is constitutional only when it is entered into knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43). In order to determine whether a plea was entered "intelligently" and "knowingly," "'[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A court must make this determination "based upon the totality of the circumstances." *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1996). A court charged with determining the nature of a guilty plea:

> must look to various circumstantial factors, such as the relative intelligence
> of the defendant; the degree of his familiarity with criminal proceedings;

whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904.

The post-conviction court found that the petitioner made the decision to enter his plea of his own accord. The post-conviction court found that the petitioner exhibited no signs of mental incapacity. He was represented by an experienced attorney with forty criminal trials to his credit. Trial counsel informed the petitioner of the potential sentence that he was facing and his available options. Trial counsel met frequently with the petitioner and his family to discuss the petitioner's legal options. After the trial court denied the motion to suppress, trial counsel urged the petitioner to accept the State's plea offer of thirty-five years. Despite trial counsel's advice that the offer would evaporate if he declined it and that the petitioner was effectively receiving forty-eight hours of freedom in exchange for additional years of a prison sentence, the petitioner desired an additional weekend to make his decision. Finally, the transcript of the guilty plea hearing indicates that the trial court engaged in a lengthy colloquy with the petitioner in which the petitioner agreed that he understood the rights that he was waiving by pleading guilty, and the nature and consequences of his plea of guilty. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). We conclude that the petitioner entered a knowing and voluntary guilty plea, and he is not entitled to any relief.

## CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

10